# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **MICHELLE A. LEVIN,** ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| **U.S. INTERNAL REVENUE SERVICE,** ) | |
| ) | |
| *Defendant*. ) | |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Michelle A. Levin ("Plaintiff" or "Plaintiff Levin") brings this action against Defendant, United States Internal Revenue Service, to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. As grounds therefore, Plaintiff alleges as follows:

## INTRODUCTION

1. In 2020, the world was confronted with a pandemic that had no equal in living memory. Deemed the "greatest threat to prosperity and well-being the US has encountered since the Great Depression[,]" the estimated cumulative financial costs of COVD-19 were forecast at $16 trillion. *See* David M. Culter, PhD and Lawrence H. Summers, PhD, *The COVID-19 Pandemic and the $16 Trillion*

*Virus.* (Oct. 20, 2020) JAMA.2020;324(15):1495–1496. doi:10.1001/jama.2020.19759.[1]

2. Those realities led the federal government to enact a series of sweeping economic measures to assist businesses and American citizens. Through emergency measures like the Paycheck Protection Program ("PPP") and Economic Impact Payments, the government authorized payments directly to households and businesses. Those remedial measures were intended for broad effect.

3. One of those measures was the Employee Retention Credit ("ERC") enacted in Section 2301 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). The Employee Retention Credit essentially refunded a portion of the payroll taxes paid by employers if they retained employees during the pandemic.

4. The IRS' statement in May 2020 explained that the CARES Act "encourages businesses to keep employees on their payroll by providing them an Employee Retention Credit. It also helps to make sure workers aren't forced to choose between their paychecks and the public health measures needed to combat the coronavirus." *See* IRS Statement FS-2020-05 May 2020.

5. The Employee Retention Credit incentivized employers to retain employees who might have otherwise been laid off due to a slowdown in business.

---

[1] *See also* The Council of Economic Advisors, *Evaluating the Effects of the Economic Response to COVID-19* (Aug. 2020), https://trumpwhitehouse.archives.gov/wp-content/uploads/2020/08/Evaluating-the-Effects-of-the-Economic-Response-to-COVID-19.pdf.

2

6. Unlike the Paycheck Protection Plan program, which was essentially "free money" to applicants in the form of a forgivable loan, the Employee Retention Credit was merely a rebate of taxes that had already been paid by the employer.

7. Under the CARES Act, an employer was entitled to claim the ERC if it (1) was fully or partially suspended during the calendar quarter due to orders from appropriate governmental authorities relating to COVID-19, (2) experienced a significant decline in gross receipts, or (3) was a qualifying start-up business.

8. ERC was originally touted as a tremendous resource for Americans businesses with the White House and the IRS taking steps to bring awareness to this program. Carman Reinicke, *Biden encourages businesses to take advantage of the employee retention credit*.[2]

9. Between 3.6 million and 4 million ERC claims were filed between 2020 and 2023. While Congress never expressed misgivings about the program, the IRS had a change of heart and began discouraging businesses from utilizing the credit. As stated in a recent Forbes article on the ERC: "The IRS management anticipated that approximately 70%-80% of small and medium businesses (as well as tens of thousands of charities) were good candidates for taking the ERC. The reality is —

---

[2] Carmen Reinicke, *Biden Encourages Businesses to Take Advantage of the Employee Retention Credit. Here's what you need to know*, CNBC (May 12, 2021, 9:37 AM), https://www.cnbc.com/2021/05/12/biden-is-encouraging-eligible-businesses-to-take-advantage-of-this-big-tax-break.html.

to date the actual numbers of businesses and charities applying for the ERC — is far below that. Small and medium businesses (as well as tax-exempts/charities) are leaving billions of dollars on the table."[3]

10.  The IRS took steps to stem the payment of ERC refunds through a voluntary disclosure program and a claim withdrawal process, as well as allusions to potential criminal prosecution.[4]

11.  The IRS encouraged participation in the voluntary disclosure and withdrawal programs by publicly stating that the ERC program involved "widespread abuse," but, as shown below, lacked any evidence to support those claims.[5] The IRS also publicized its use of **Criminal Investigation** agents to "host a

---

[3] Dean Zerbe, *Employee Retention Credit – Still The One (The Latest Update)*, Forbes (Feb. 16, 2022, 11:17 AM), https://www.forbes.com/sites/deanzerbe/2022/02/15/employee-retention-credit---still-the-one-the-latest-update/.

[4] *See Employee Retention Credit – Voluntary Disclosure Program*, IRS, https://www.irs.gov/coronavirus/employee-retention-credit-voluntary-disclosure-program. *See also Frequently Asked Questions About The Employee Retention Credit Voluntary Disclosure Program*, IRS, https://www.irs.gov/coronavirus/frequently-asked-questions-about-the-employee-retention-credit-voluntary-disclosure-program ("Q5: What happens if I don't participate in ERC-VDP? Updated Feb. 14, 2024. A5: The IRS continues to identify new methods of analyzing ERC claims to identify ineligible taxpayers. If you claimed and received ERC, you're not entitled to, and you don't participate in ERC-VDP to correct it, you risk detection by the IRS, which could lead to substantial interest and penalties and increase your risk of criminal investigation and prosecution.").

[5] *IRS Employee Retention Credit compliance effort tops $1 billion threshold since fall; Voluntary Disclosure Program suspended after March 22, special withdrawal program remains open as audits, investigations intensify*, IR-2024-78, IRS (March 22, 2024), https://www.irs.gov/newsroom/irs-employee-retention-credit-compliance-effort-tops-1-billion-threshold-since-fall-voluntary-disclosure-program-suspended-after-march-22-special-withdrawal-program-remains-open-as-audits.

4

series of educational sessions" about the ERC claims and eligibility criteria (rather than civil agents) in connection with its withdrawal and voluntary disclosure programs.[6]

12. The IRS's claims of widespread abuse have not borne out. As of March 2024, the IRS only identified only 22,000 claims that it viewed as "improper," or less than 1% of the total claims filed. IR-2024-78 (March 22, 2024).

13. Further, of the 352 criminal investigations relating to ERC commenced by the IRS, only 18 resulted in charges, just over 5%. And only 11 of those charges resulted in a conviction, which is less than 3%.[7]

14. The IRS publicly claimed that it was challenging claims that were filed based on fraudulent employees or businesses that didn't exist.[8]

---

[6] *IRS continues work on Employee Retention Credit; new IRS CI education sessions come as agency urgers businesses to review VDP, withdrawal program for questionable claims*, IR-2024-21, IRS (Jan 25, 2024), https://www.irs.gov/newsroom/irs-continues-work-on-employee-retention-credit-new-irs-ci-education-sessions-come-as-agency-urges-businesses-to-review-vdp-withdrawal-program-for-questionable-claims.

[7] *Id*. at fn. 6 ("As of Dec. 31, CI has initiated 352 investigations involving more than $2.9 billion in potentially fraudulent ERCs in tax years 2020-2023.") (January 25, 2024)), https://www.wsj.com/politics/policy/businesses-cash-irs-covid-credit-mess-8fad6ba7 (ERC cost is estimated at over $230B (January 20, 2024).

[8] *See To protect taxpayers from scams, IRS orders immediate stop to new Employee Retention Credit processing amid surge of questionable claims; concerns from tax pros*, IR-2023-169, IRS (Sept. 14, 2023), https://www.irs.gov/newsroom/to-protect-taxpayers-from-scams-irs-orders-immediate-stop-to-new-employee-retention-credit-processing-amid-surge-of-questionable-claims-concerns-from-tax-pros.

5

15. In reality, the IRS began to disallow claims based its overly narrow and unsupported interpretations of "fully or partially suspended" and "orders from an appropriate governmental authority." *See* IRS Guidance Document "Notice 2021-20" at pp. 24-50 available at https://www.irs.gov/pub/irs-drop/n-21-20.pdf.

16. The "thousands of audits" in the IRS pipeline are not evidence of rampant fraud. Instead, IRS officials explained that "the Service is taking a much more conservative approach" in auditing ERC claims and changing its guidance about the documentation taxpayers must retain. *See IRS ERC Audits Undergo Changes as They Get Older*, Tax Notes, attached as **Exhibit "1."**

17. In these audits, the IRS is taking the position that many businesses **were not** impacted by government orders or supply chain issues resulting from the COVID-19 pandemic even though, in 2022, the IRS was forced to admit that it improperly destroyed over 30 million paper-filed tax returns without processing them as a result of the backlog created by the COVID-19 pandemic.[9]

18. In fact, it wasn't until April 10, 2023, that President Biden enacted a bill ending the COVID-19 national emergency and public health emergency, which were originally declared by President Trump on March 13, 2020. *See*

---

[9] Kate Dore, CFP, Tax professionals 'horrified' by IRS decision to destroy data on 30 million filers CNBC (May 13, 2022, 10:55 AM), https://www.cnbc.com/2022/05/12/tax-pros-horrified-by-irs-decision-to-destroy-data-on-30-million-filers.html.

https://www.cbsnews.com/news/biden-signs-bill-ending-covid-19-national-emergency.

19. Section 2301 of the CARES Act – providing Employee Retention Credit For Employers Subject to Closing Due to COVID-19 – grants the Secretary the power to issue regulations related to the ERC:

> (l)     Regulations and Guidance.--The Secretary shall issue such forms, instructions, regulations, and guidance as are necessary—
>
> (1) to allow the advance payment of the credit under subsection (a), subject to the limitations provided in this section, based on such information as the Secretary shall require,
> (2) to provide for the reconciliation of such advance payment with the amount advanced at the time of filing the return of tax for the applicable calendar quarter or taxable year,
>
> (3) to provide for the recapture of the credit under this section if such credit is allowed to a taxpayer which receives a loan described in subsection (j) during a subsequent quarter,
>
> (4) with respect to the application of the credit under subsection (a) to third party payors (including professional employer organizations, certified professional employer organizations, or agents under section 3504 of the Internal Revenue Code of 1986), including regulations or guidance allowing such payors to submit documentation necessary to substantiate the eligible employer status of employers that use such payors, and
>
> (5) for application of subparagraphs (A)(ii)(II) and (B) of subsection (c)(2) in the case of any employer which was not carrying on a trade or business for all or part of the same calendar quarter in the prior year.

*See* Section 2301 of CARES Act at (l)(1)-(5).

20. To date, the IRS has not issue regulations to implement COVID policies enacted by Congress.

21. Instead, the IRS has relied on ad hoc enforcement and applied the ERC through guidance documents that circumvented the Administrative Procedure Act's notice-and-comment rulemaking requirements. The IRS developed grounds for disallowance, not based on reasonable interpretation of the statute, but based on a moving target toward maximizing revenue.

22. To bring light to the IRS's enforcement policies and criteria, the Plaintiff in this case submitted a FOIA request seeking all guidance issued to revenue agents charged with examining claims for the ERC.

23. The IRS has not yet produced the documents requested under the FOIA.

24. Plaintiff seeks to compel the disclosure of records unlawfully withheld by the Internal Revenue Service ("Defendant" or "IRS").

## JURISDICTION AND VENUE

25. FOIA states that an "agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

26. The Court has subject matter jurisdiction and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

8

27. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

28. FOIA provides for venue in either: (1) the judicial district where the plaintiff resides or has her principal place of business, (2) the judicial district where the agency records are situated, or (3) the District of Columbia. 5 U.S.C. § 552(a)(4)(B).

29. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

30. Plaintiff Levin is an attorney who represents taxpayers in disputes with the IRS, including taxpayers who claimed the ERC. She resides in the Northern District of Alabama. Her principal place of business is also in the Northern District of Alabama at 305 Church Street SW, Suite 800, Huntsville, Alabama 35801. On October 13, 2023, Plaintiff Levin submitted a FOIA request seeking documents relating to the Internal Revenue Service's examination of employment tax credit claims. A true and correct copy of Plaintiff Levin's Fax Cover Sheet and October 13, 2023 FOIA request is attached hereto and incorporated herein as **Exhibit "2."**

31. Defendant IRS is an agency of the U.S. Government and is headquartered at 1111 Constitution Avenue Northwest, Washington, D.C. 20224. The IRS is an agency within the meaning of 5 U.S.C. § 552(f).

## STATUTORY FRAMEWORK

32. The FOIA's purpose is "to encourage public disclosure of information so citizens may understand what their government is doing." *Miccosukee Trible of Indians of Fla. v. United States*, 516 F.3d 1235, 1244 (11th Cir. 2008) (internal quotations omitted).

33. FOIA requires federal government agencies to promptly release requested agency records to the public unless one or more specific statutory exemptions apply. 5 U.S.C. § 552(a)(3)(A).

34. Records are agency records subject to the FOIA if the agency created or obtained them and the agency controlled them at the time the FOIA request was made. *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144-45 (1989).

35. An agency has twenty (20) working days after receipt of a FOIA request in which to determine whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i). If the agency fails to respond, this Court has jurisdiction upon receipt of a complaint to review, de novo, the agency's failure to respond and order the production of any agency records improperly withheld from the requester. 5 U.S.C. § 552(a)(4)(B).

36. In *Judicial Watch v. Rossotti*, the court reasoned:

> Upon receipt of a FOIA request, an agency must determine within 20 days whether it will comply and "immediately notify the person making such request of such

> determination and the reasons therefor . . . .""If the agency has not responded within the statutory time limit[ ], then, under 5 U.S.C. § 552(a)(6)(C), the requester may bring suit."

285 F. Supp. 2d 19, 22 (D.D.C. 2003) (quoting 5 U.S.C. § 552(a)(6)(A)(i) and *Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir.1990)).

37. The IRS has the burden of demonstrating that the withheld documents [requested by the FOIA requester] are exempt from disclosure." *Elec. Priv. Info. Ctr. v. Customs and Border Prot.*, 160 F. Supp. 3d 354, 357 (D.D.C. 2016) (citing *Boyd v. U.S. Dep't of Just.*, 475 F.3d 381, 385 (D.C. Cir. 2007)).

38. An agency must prove that it "fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Id.* (citing *Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 119 (D.D.C. 2005)).

## STATEMENT OF FACTS

39. By letter sent by facsimile on October 13, 2023, Plaintiff Levin sent a FOIA request to the Internal Revenue Service's Central Processing United at fax number (877) 891-6035. *See* Exhibit "2."

40. As set forth in Exhibit "1," Plaintiff Levin's October 13, 2023 FOIA request sought various documents related to employee retention credits created by the CARES Act, including but not limited to:

11

> Any and all guidance or other information provided to revenue agents and IRS Counsel by any division, employee, or contractor, of the IRS or Department of Treasury, from March 202 to present, which relates to examination or evaluation of returns or other documents claiming the employee retention credits found in section 3134 of the Internal Revenue Code, enacted under section 2301 of the CARES Act, Pub. L. No. 116-136, and all amended versions to the same. Not included in this request is information made available to the public online such as the internal revenue manual.

41. By letter dated October 18, 2023, IRS Disclosure Manager, Deanna Fitti-Hafer, confirmed receipt of Plaintiff Levin's October 13, 2023 FOIA request. A true and correct copy of Fitti-Hafer's letter dated October 18, 2023 is attached hereto and incorporated herein as **Exhibit "3."**

42. The IRS' October 18, 2023 letter stated that the IRS perceived "that your request is properly categorized as a 'commercial' request in accordance with 26 C.F.R. 601.702 (f)(3)(ii)." Notably, the letter did not address the 20 business-day period for a response to the FOIA request and it did not seek an additional 10 business-day statutory extension. *See* Ex. "3."

43. On October 25, 2023, IRS Tax Law Specialist, Casey Lomax ("Lomax"), confirmed in a telephone call with Plaintiff Levin and in an email to Plaintiff Levin that: (1) Plaintiff Levin's request would be processed as a commercial request; (2) The request needed to be re-scoped; and (3) that the FOIA did not require the IRS to do research. Plaintiff Levin responded the same day and confirmed the categorization as a commercial requester, the re-scope and that the FOIA does not

12

require research. A true and correct copy of Lomax's October 25, 2023 email and Plaintiff Levin's response is attached as **Exhibit "4."**

44. On October 25, 2023, Lomax responded again and asked for a statement, specifically worded, "so that we fully understand what it is you are looking for." *See* Ex. "4." Plaintiff Levin responded, confirming she was requesting:

> All readily available guidance and other information provided to revenue agents by IRS Counsel, which relates to the examination of returns or other documents claiming the employee retention credits found in section 3134 of the Internal Revenue Code, under section 2301 of the CARES Act, Pub. L. No. 116-136.

*See* Ex. "4"

45. On November 6, 2023, Lomax emailed Plaintiff Levin stating that "[w]e are still processing your request." Lomax attached to her email a letter from Jeremy Woods, Acting Disclosure Manager, ("Woods"), which provided, in part:

> I am unable to provide the information you requested by November 13, 2023, which is the 20 business-day period required by law for us to respond. In certain circumstances, the FOIA allows for an additional 10-day statutory extension. I need additional time to search for and, to the extent that records exist, collect requested records from other locations. As part of this extension, the statutory response date will be extended to November 29, 2023.
>
> Unfortunately, I will still be unable to respond to you by the extended statutory response date. I expect to provide a final response to your request by December 29, 2023. You don't need to reply to this letter if you agree to this extension.[10]

---

[10] Lomax's November 6, 2023 letter also notes that there is no right to an administrative appeal for failure to meet the statutory 20 business-day response or additional 10 business-day extension timeframes. He also noted, "However, you do have the right to file suit for a judicial review. You

A true and correct copy of Lomax's November 6, 2023 email and Woods' November 6, 2023 letter is attached as **Exhibit "5."**

46.    On December 22, 2023, Woods provided another letter in response to Plaintiff Levin's October 13, 2023 FOIA request.  In it, Woods stated that he expected to "provide a final response to your request by April 30, 2024." The letter reiterated that there is no right to an administrative appeal for failure to meet the statutory deadlines, but also outlined Plaintiff Levin's right to file suit for judicial review. A true and correct copy of Woods' December 22, 2023 letter is attached as **Exhibit "6."**

47.    On April 2, 2024, Lomax emailed Plaintiff Levin and confirmed, "I am still processing your request."  The email noted that the IRS does not consider Department of Treasury documents for this request. The same day, Plaintiff Levin responded and confirmed receipt of Lomax's email and thanked her for her attention to the FOIA. A true and correct copy of Lomax's April 2, 2024 email and Plaintiff Levin's response is attached as **Exhibit "7."**

48.    In a letter dated April 29, 2024, Lomax represented to Plaintiff Levin that Lomax "expect[s] to provide a final response to your request by May 10, 2024. A true and correct copy of Lomax's April 29, 2024 letter is attached as **Exhibit "8."**

---

can file suit after November 29, 2023."  The letter noted the District of Columbia as being a proper venue for a judicial suit. *See* Ex. "5."

14

49. As of the filing of this Complaint, Plaintiff Levin has not a substantive response to her FOIA request. The FOIA request response is past due pursuant to the requirements of 5 U.S.C. § 552(a)(6)(A)(i).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

50. As stated in Woods' letters dated November 6, 2023 and December 22, 2023, "[p]ursuant to 26 CFR § 601.702, there is no right to an administrative appeal for failure to meet the statutory 20 business-day, or additional 10 business-day, timeframes for response." *See* Exs. 5, 6. However, as said letters provide, there is a right to file suit for a judicial review, in this case, after November 29, 2023. Exhibit 3, p. 2.

51. Therefore, there were no administrative remedies to be exhausted prior to the filing of this Complaint pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

## CAUSE OF ACTION

**Violation of the Freedom of Information Act, 5 U.S.C. § 552 for Failure to Disclose Responsive Records**

52. Plaintiff re-alleges paragraphs 1 through 51 as are fully stated herein.

53. Defendant is unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. § 552.

54. Plaintiff has a legal right to obtain such records, and no legitimate basis exists for Defendant's failure to disclose them. Defendant has not objected to the

requests nor asserted any grounds or bases for failing to respond and produce the requested records.

55. As Defendant has admitted, there are no applicable administrative remedies for Plaintiff to exhaust with respect to the IRS's failure to meet the statutory 20 business-day, or additional 10 business-day timeframe for a response to a FOIA request.

56. Plaintiff is being irreparably harmed by reason of Defendant's unlawful withholding of requested records, and Plaintiff will continue to be irreparably harmed unless Defendant is compelled to conform its conduct to the requirements of the law.

57. Defendant's failure and refusal to obey its statutory obligations frustrates the essential purpose of the Freedom of Information Act, are flagrant, and without any legal excuse, and evidence a total disregard for the fundamental rights the legislation in question is designed to protect.  Plaintiff has been forced to pursue this action in Court to protect and exercise her rights to documents and information which are being withheld.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests this Court to:

(1)   Expedite this proceeding as provided for in 28 U.S.C. § 1657.

(2)   Declare Defendant is unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. § 552.

(3)   Order Defendant to conduct a search for any and all responsive records to Plaintiff Levin's October 13, 2023 FOIA request and to demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to the request.

(4)   Order Defendant to produce, by a date certain, any and all non-exempt records responsive to Plaintiff's FOIA request and *Vaughn* indexes of any responsive documents withheld, citing the appropriate FOIA exception.

(5)   Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to the FOIA request.

(6)   Grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E).

(7)   Grant Plaintiff such further and additional relief as the Court deems just and proper to which Plaintiff may show herself to be justly entitled.

Respectfully submitted this the 8th day of May 2024.

                              */s/ Cheryl Howell Oswalt*
                              Cheryl Howell Oswalt
                              Gregory P. Rhodes
                              Logan Abernathy

**DENTONS SIROTE PC**
2311 Highland Ave. S.
Birmingham, Alabama 35205
cheryl.oswalt@dentons.com
gregory.rhodes@dentons.com
Telephone:  (205) 930-5408
              (205)-930-5445


305 Church Street SW
Huntsville, Alabama 35801
logan.abernathy@dentons.com
Telephone:  (256) 518-3609

*Attorneys for Plaintiff Levin*

18

## VERIFICATION

Under the penalty of perjury under the laws of the United States, I declare I have read the foregoing and that the facts alleged therein are true and correct to the best of my knowledge and belief, excepting only those allegations which are identified as based on information and belief. Such allegations are based on a good faith belief. I understand that a false statement in this Verification will subject me to penalties of perjury.

_____
By: Michelle A. Levin, Esq.

Title: As Plaintiff, FOIA Requester

Date: May 8, 2024

DOCSBHM\2462012\5