# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| Michelle A. Levin, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) Case No. 5:24-cv-00582-HNJ |
| U.S. Internal Revenue Service, | ) ) ) |
| *Defendant*. | ) ) |

## BRIEF IN SUPPORT OF INTERNAL REVENUE SERVICE'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Michelle Levin submitted a request under the Freedom of Information Act ("**FOIA**") to the Internal Revenue Service ("**Service**"). Plaintiff does not challenge the adequacy of the Service's search for responsive records and the Service only withheld information pursuant to applicable FOIA exemptions. In this brief and the attached declaration (Declaration of Amy L. Mielke ("**Mielke Decl.**")), the Service has described the justifications for non-disclosure and demonstrated that the withheld information falls within the claimed exemptions. Thus, the Court should grant summary judgment for the Service.

### STATEMENT OF UNDISPUTED FACTS

The Service incorporates the facts enumerated in the attached Statement of Undisputed Material Facts ("**SUMF**").

## BACKGROUND

Plaintiff submitted a request for records under the FOIA seeking certain records related to the Service's examination of employee retention credit ("***ERC***") claims. (Amend. Compl., ¶22.) In response, the Service provided Plaintiff with 1,561 pages of records on May 8, 2024. (*Id*., ¶53.) The same day, Plaintiff filed this suit. (*Id*., ¶24.)

Following discussion between counsel, Plaintiff agreed to narrow the scope of her FOIA request to: "all readily available non-taxpayer specific guidance, including templates and trainings, provided by IRS Counsel to IRS Revenue Agents and Supervisory Revenue Agents related to examination or evaluation of returns claiming [ERCs.]" (Mielke Decl., ¶12.) In response, the Service conducted an additional search which located 71 pages of responsive records. (*Id*., ¶11) The Service provided Plaintiff with those 71 pages, along with 300 other pages intended to be included with the May 8, 2024 production but which were not transmitted due to the initiation of this litigation. (*Id*., ¶13.) The Service fully released 351 of the 371 total pages. (*Id*.) Pursuant to applicable FOIA exemptions to disclosure, the Service redacted portions of 19 pages and fully withheld one page. (*Id*.) FOIA Exemptions 5, 7(A), and 7(E) all apply to each withholding.  (*Id*., ¶¶17-19.)

## SUMMARY JUDGMENT STANDARD IN FOIA

Under FOIA, requesters can seek release of records maintained by a federal agency. 5 U.S.C. § 552(a). But the required disclosure is not without limits—the statute includes nine exemptions from disclosure. 5 U.S.C. § 552(b). A FOIA requester who believes an agency has improperly withheld records may file suit in the appropriate district court. *Levitt v. IRS*, No. 2:24-CV-00284-SGC, WL 1745758, at *6 (N.D. Ala. June 24, 2025) (citing 5 U.S.C. § 552(a)(4)(B)). "[T]he vast majority" of those suits "can be resolved on summary judgment." *Id*. (citations omitted.)

"To prevail on a summary judgment motion in a FOIA case, an agency must show (1) it conducted an adequate search for responsive documents and (2) responsive documents it did not produce were properly withheld." *Id.* (citing *Jimenez v. Dep't of Homeland Sec.*, 119 F.4th 892, 899 (11th Cir. 2024)). An agency can satisfy its burden through relatively detailed, nonconclusory affidavits or declarations submitted in good faith. *Jimenez*, 119 F.4th at 900 (citations omitted). An agency's declarations are entitled to a presumption of good faith. *Id*. (citations omitted). That presumption can be rebutted only with evidence of bad faith on the part of the agency—mere speculation is not enough. *Id*. (citations omitted).

## ARGUMENT

Plaintiff does not challenge the adequacy of the Service's search. (SUMF, ¶11.) Instead, Plaintiff challenges every FOIA exemption asserted by the Service. (ECF. No. 33, ¶7.) Thus, the Service need only show that the information Plaintiff seeks was properly withheld. *See Jimenez*, 119 F.4th at 899.

FOIA Exemption 7 protects from disclosure six categories of "records or information compiled for law enforcement purposes[.]" 5 U.S.C. § 552(b)(7). Relevant here, Exemption 7 protects such records or information that "(A) could reasonably be expected to interfere with enforcement proceedings" and "(E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]" *Id.* § 552(b)(7)(A), (E). Exemption 5 protects attorney-work product. *See* 5 U.S.C. § 552(b)(5).

This brief and the supporting declaration—which is entitled to a legal presumption of good faith (*see id.*)—demonstrates that the withheld information falls within the claimed exemptions. Thus, the Service is entitled to summary judgment.

### I. The Service properly withheld information compiled for law enforcement purposes which are exempt from disclosure.

The threshold determination for any subcategory under Exemption 7 is whether the documents or information at issue were compiled for law enforcement purposes. *Id*. § 552(b)(7). "Documents compiled by the IRS in the exercise of its law enforcement mandate qualify as documents compiled for law enforcement purposes within the meaning of Exemption 7." *Shannahan v. IRS*, 637 F. Supp. 2d 902, 918 (W.D. Wash. 2009) (citing *Lewis v. IRS*, 823 F.2d 375, 379 (9th Cir. 1987)). Both criminal and civil enforcement activities of the Service fall within the scope of Exemption 7. *Id*. (citations omitted). Indeed, this Court has held that a "tax audit is certainly performed in aid of enforcement of our tax laws, civil and criminal, and there should be no distinction under FOIA Exemption 7 between monitoring activities and prosecutorial activities, both of which serve law enforcement purposes." *B.&C. Tire Co. v. IRS*, 376 F. Supp. 708, 713 n.11 (N.D. Ala. 1974). Other courts agree: "[a]n IRS audit is a 'law enforcement' activity for purposes of Exemption 7." *EduCap Inc. v. IRS*, No. Civ.A. 07-2106RMC, 2009 WL 416428, at *4 (D.D.C. Feb. 18, 2009) (citation omitted). Thus, documents gathered or created by the Service for purposes of civil examinations constitute "records or information compiled for law enforcement purposes" under Exemption 7. *Shannahan*, 637 F. Supp. 2d at 918.

5

Courts have found that a law enforcement purpose can sometimes be apparent from the circumstances surrounding the documents at issue. *See, e.g., Houser v. Church*, No. 16-1142, 2020 WL 5518214, at *14 (D.D.C. Sept. 14, 2020) (noting that "criminal convictions, the language of the plaintiff's FOIA request, and the nature of the responsive records" make apparent "that the IRS was engaged in law enforcement activities[.]") The law-enforcement-purpose inquiry focuses "on how and under what circumstances the requested files were compiled" and "whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding[.]" *Bartko v. DOJ*, 898 F.3d 51, 64 (D.C. Cir. 2018) (quoting *Jefferson v. DOJ*, 284 F.3d 172, 176-77 (D.C. Cir. 2002)).

The information withheld here easily satisfies the law-enforcement-purpose inquiry. It was compiled for use by Service examiners evaluating ERC claims. (Mielke Decl., ¶17(a).) Such examinations constitute law enforcement proceedings. *See, e.g., EduCap Inc.*, 2009 WL 416428, at *4 (D.D.C. Feb. 18, 2009). Thus, the information was compiled for a law enforcement purpose. *See Bartko*, 898 F.3d at 64. Even without an affirmative showing by the Service, it is apparent from the circumstances on the record that the requested information was compiled for a law enforcement purpose: Plaintiff requested "guidance, including templates and trainings" related to the Service's "evaluation or examination of returns[.]" (Mielke Decl., ¶12.) "Training" for agency personnel as to "how to enforce the law is a 'law

enforcement purpose.'" *Grey v. Alfonso-Royals*, 140 F.4th 173, 178 (4th Cir. 2025) (citations omitted). On its face, Plaintiff's request sought information compiled for law enforcement purposes.

### A. The Service properly withheld information under Exemption 7(A) because disclosure could reasonably be expected to interfere with law enforcement proceedings.

FOIA Exemption 7(A) recognizes that "law enforcement agencies have legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it comes time to present their case." *See, e.g.*, *Greenberger v. IRS*, 283 F. Supp. 3d 1354, 1372-73 (N.D. Ga. 2017) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)). Thus, Exemption 7(A) protects information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). It is well-settled that under Exemption 7(A), the government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding. *See, e.g.*, *Agrama v. IRS*, 282 F. Supp. 3d 264, 273 (D.D.C. 2017), *aff'd* No. 17-5270, 2019 WL 2064505 (D.C. Cir. Apr. 19, 2019) (citations omitted). Rather, the Supreme Court has held that an agency can satisfy this burden by making a generalized showing that release of the records would interfere with

7

enforcement proceedings. *Robbins Tire*, 437 U.S. at 232 (approving "generic determinations of likely interference" under Exemption 7(A)).

Release of the withheld information here would harm ongoing and anticipated ERC examinations and refund litigation. The information consists of template documents for use in its ERC examinations, which constitute law enforcement proceedings. (Mielke Decl., ¶18(a)); *see, e.g.*, *EduCap Inc.*, 2009 WL 416428, at *4 (D.D.C. Feb. 18, 2009). Disclosure would prematurely reveal the Service's strategy in those proceedings—including the nature, direction, scope, and focus of the Service's case. (Mielke Decl., ¶18.) Revealing such information could tip off targets of potential enforcement proceedings, enabling them to tailor responses to avoid detection or inhibit access to information sought by agents to support their conclusions. This would allow tax cheats to avoid civil tax enforcement. (*Id*.) And to the extent those civil examinations lead to criminal investigations and prosecutions, disclosure would interfere with those matters as well. (*Id*.)

As established above, the information at issue was compiled for law enforcement purposes. And the Service has demonstrated that disclosure of the information at issue would harm law enforcement proceedings. Therefore, the information was property withheld under FOIA Exemption 7(A). The Court should grant summary judgment for the Service.

**B. The Service properly withheld information under Exemption 7(E) constituting law enforcement techniques, procedures, and guidelines for investigations or prosecutions, disclosure of which would risk circumvention of the law.**

In addition to 7(A), the withheld information is also protected by Exemption 7(E). Exemption 7(E) permits the government to withhold (i) techniques and procedures for law enforcement investigations or prosecutions, and (ii) guidelines for law enforcement investigations or prosecutions, if disclosure may reasonably be expected to risk circumvention of the law. 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding[.]" *Blackwell v. FBI*, 646 3d 37, 42 (D.C. Cir. 2011) "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Id*. (quoting *Mayer Brown LLP v IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

"IRS tax examinations constitute 'law enforcement' investigations." *Agrama*, 282 F. Supp. 3d at 274. In the context of Exemption 7(E), techniques and procedures "includes both law enforcement methods—the actions that law enforcement personnel take to identify and neutralize bad actors—as well as the triggers for the application of methods." *Knight First Amend. Inst. at Columbia Univ. v. USCIS*, 30 F.4th 318, 330 (2d Cir. 2022). The "key issue" in determining whether information falls within the scope of the exemption is "whether disclosure of th[e] [redacted]

9

material would reveal particulars about the way in which an agency enforces the law and the circumstances that will prompt it to act." *Id*. at 331. For example, "if [an] agency informs tax investigators that cash-based businesses are more likely to commit tax evasion than other businesses, and therefore should be audited with particular care, focusing on such targets constitutes a 'technique or procedure' for investigating tax evasion." *Id*. (quoting *Allard K. Lowenstein Int'l Hum. Rts. Project v. DHS*, 626 F.3d 678, 682 (2d Cir. 2010)). Guidelines, meanwhile, generally refers to "resource allocation." *Id*.

Documents that reveal "specific questioning techniques or question-related language" as well as "questions to ask and measures to implement in response to certain documents or to [ ] assertions" are covered by the exemption. *ACLU of Maine Found. v. USCIS*, 2:20-cv-422, 2022 WL 2355502, at *1 (D. ME. June 30, 2022). (citing *Knight*, 30 F.4th at 331-33). Checklist-type documents used to assess compliance with tax laws or that include grounds the Service uses to assess compliance are also protected. *See, e.g.*, *Palmarini v. IRS*, No. 17-3430, 2019 WL 1429547, at *5 (E.D. Pa. Mar. 29, 2019) (checklist form used to assess tax law compliance properly withheld because release would reveal enforcement processes and priorities of IRS that "may enable tax dodgers to avoid detection"); *CREW v. DOJ*, 746 F.3d 1082, 1102 (D.C. Cir. 2014) (checklist indicating why taxpayers were selected for examination and including grounds the Service uses to assess

10

compliance properly withheld). The Service's settlement guidelines have also been deemed protected by the exemption. *Mayer Brown LLP v. IRS*, 562 F.3d 1190 (D.C. Cir. 2009). Finally, this Circuit has held that "Exemption 7(E) also covers disclosures that would reveal an agency's investigatory "targeting priorit[ies]." *Broward Bulldog, Inc. v. DOJ*, 939 F.3d 1164, 1192 (11th Cir. 2019) (quotation and citation omitted.)

    The information at issue here is squarely covered by Exemption 7(E). (*See* Mielke Decl., ¶19.) Eight of the partially withheld pages—nearly half of the total—comprise questions to ask and documents to be collected by the Service during audits. (Mielke Decl., ¶19(a).) Such information is explicitly protected under FOIA case law. *See ACLU of Maine Found. v. USCIS*, 2022 WL 2355502, at *1 (D. ME. June 30, 2022); *Knight*, 30 F.4th at 331-33 (withholding proper because disclosure of questions would risk circumvention of law). Indeed, the information is exactly the type that the exemption is meant to protect. *See Mayer Brown*, 562 F.3d at 1193 ("If the FOIA request here sought a checklist used by agents to detect fraudulent tax schemes … applicability of the exemption would be obvious.") Another eight pages reveal the Service's interest in specific facts and claims (Mielke Decl., ¶19(a))—also a quintessential example of proper withholdings under the exemption. *See Knight*, 30 F.4th at 331 (citing instruction to focus audits on certain business types as an example of a technique or procedure protected by Exemption 7(E)).

Like the compliance checklists withheld in *Palmarini* and *CREW*, the information here consists of "guidelines, techniques, and procedures" that the Service uses when auditing ERC claims. *See Palmarini*, 2019 WL 1429547, at *5 (E.D. Pa. Mar. 29, 2019); *CREW*, 746 F.3d at 1102. The information also contains insight as to the strength of the Service's position on certain ERC arguments. (Mielke Decl., ¶18.) Thus, it is also like the information protected in *Mayer Brown*. 562 F.3d 1190 (D.C. Cir. 2009). Another eight pages contain information regarding the Service's interest in specific facts or claims. (Mielke Decl., ¶19(a).) This would reveal the targeting priorities of the Service's investigations and is thus protected under the law of this Circuit. *Broward Bulldog, Inc.*, 939 F.3d at 1192.

And all the withheld information reveals the Service's methods for identifying deficient claims and the triggers for application of those methods. (Mielke Decl., ¶19(a).) Disclosure of this information would reveal particulars about how the Service enforces the law in its examinations and the specific circumstances that prompt it to act. (*Id*.) Thus, the information is properly withheld under Exemption 7(E). *Knight*, 30 F.4th at 330. Armed with this knowledge, unscrupulous ERC claimants could anticipate application of the Service's guidelines and procedures and circumvent the law. (Mielke Decl., ¶19(a).)

The Service has demonstrated through the attached, sworn declaration that the withheld information consists of techniques, procedures, and guidelines for law

enforcement investigations. (*Id*.) The Service has further demonstrated that release of the withheld information would create a risk of circumvention of the law. (*Id*.) These assertions are well-supported by case law. *See, e.g.*, *Knight*, 30 F.4th at 330. Thus, the Service has met its low burden to justify withholding under Exemption 7(E). The Court should grant summary judgment for the Service.

   II.   **The Service properly withheld information protected by the attorney work-product doctrine.**

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party … in litigation with the agency." 5 U.S.C. § 552(b)(5). Through this exemption, documents normally privileged in the civil discovery context are protected from disclosure. *See, e.g.*, *Heggestad v. DOJ*, 182 F. Supp. 2d 1, 6 (D.D.C. 2000) (citation omitted.) Thus, attorney work-product privilege has traditionally been incorporated into Exemption 5. *Id.* (citation omitted.) The work-product doctrine protects documents and other memoranda prepared during and in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 510-12 (1947). It protects mental impressions, conclusions, opinions, or legal theories. *See* Fed. R. Civ. P. 26(b)(3).

The doctrine has a broad sweep: a document may qualify for the privilege even without a case docketed or where the agency is unable to identify the specific claim to which the document relates. *Heggestad*, 182 F. Supp. 2d at 8 (citing *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992) (privilege "extends to documents

13

prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated.")) The privilege also covers documents that "address the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome," even where the identity of the prospective litigation opponent is unknown. *Heggestad*, 182 F. Supp. 2d at 8 (quoting *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987)). Indeed, the privilege applies to documents prepared by government lawyers acting "as legal advisors protecting their agency clients from the possibility of future litigation" or "in connection with active investigations of potential wrongdoing[.]" *See DocuFreedom Inc. v. DOJ*, No. 17-2706, 2019 WL 3858166, at *8 (D. Kan. Aug. 16, 2019) (citations and quotations omitted.) For example, records of agency attorneys prepared "in the course of [the development of] an agency's response to administrative claims against the agency and in contemplation of potential litigation against the agency … are exempt from mandatory disclosure under Exemption 5, without regard to the status of any litigation." *Margolin v. NASA*, No. 09-00421, 2011 WL 1303221, at *9 (D. Nev. Mar. 31, 2011).

  The records here are just like those in *Margolin*—they were prepared in the development of the Service's response to ERC claims in contemplation of foreseeable litigation of those claims. *See id.*; (Mielke Decl., ¶17.) The records contain opinions, theories, and arguments contemplated in connection with those

proceedings, including attorney recommendations as to how to weigh specific facts and address certain arguments. (*Id.*, ¶17(a).) In other words, they "address the types of legal challenges likely to be mounted against a proposed program"—ERCs— and attempt to protect the agency "from the possibility of future litigation." *See DocuFreedom Inc.*, 2019 WL 3858166, at *8 (D. Kan. Aug. 16, 2019). They were created by Service attorneys for use by revenue agents in connection with the examination of ERC claims—thus they were prepared "in connection with active investigations[.]" (Mielke Decl., ¶17); *Id*. And Plaintiff acknowledges that ERC claims are highly contentious, continuing to generate an abundance of both civil and criminal litigation to this day. (Amend. Compl., ¶¶13-17.) Thus, the information here was created in anticipation of foreseeable litigation. *See, e.g.*, *Heggestad*, 182 F. Supp. 2d at 8 (citations omitted). As such, the work-product privilege attaches.

The Service has demonstrated that the withheld information contains the conclusions, recommendations, mental impressions, and legal opinions of its attorneys. (Mielke Decl., ¶17.) The Service has also shown that the withheld information was prepared in anticipation of litigation. (*Id.*) Therefore, the attorney work-product doctrine applies to the information. It was thus properly withheld under FOIA Exemption 5, and the Court should grant summary judgment for the Service.

## CONCLUSION

The Service properly withheld information pursuant to FOIA Exemptions 5, 7(A), and 7(E). The Service's position as to each is supported by well-established case law and a detailed, non-conclusory declaration. Thus, the Service has satisfied its obligations under the FOIA, and summary judgment should be granted in its favor.

Dated: July 8, 2025                     Respectfully submitted,

*/s/ Robert J. Atras*
ROBERT J. ATRAS
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
Tel: (202) 598-3738
Fax: (202) 514-6866
Robert.J.Atras@usdoj.gov
*Counsel for the Internal Revenue Service*

OF COUNSEL:
PRIM F. ESCALONA
United States Attorney
EDWARD Q. RAGLAND
Assistant United States Attorney