FILED

2026 Jan-14  AM 09:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE A. LEVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:24-cv-00582-HNJ |
| | ) | |
| U.S. INTERNAL REVENUE | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case proceeds pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (FOIA).  Plaintiff Michelle Levin, an attorney who represents taxpayers in disputes with the United States Internal Revenue Service (IRS), seeks the IRS's response to a FOIA request for guidance issued to revenue agents charged with examining claims for the Employee Retention Credit (ERC) made available through the Coronavirus Aid, Relief, and Economic Security (CARES) Act.  (Doc. 7, ¶¶ 3, 22, 31).

On July 8, 2025, the IRS filed a motion for summary judgment.  (Doc. 35).  As discussed more fully herein, FOIA Exemptions 7(A) and 7(E) protect from disclosure the information Levin seeks.  Accordingly, the court will grant summary judgment in favor of the IRS.

## STANDARD OF REVIEW

"'[U]sually, FOIA cases should be handled on motions for summary judgment,

1

once the documents in issue are properly identified and after the government has supplied affidavits or other information describing the documents.'" *Jimenez v. Dep't of Homeland Sec.*, 119 F.4th 892, 899 (11th Cir. 2024) (quoting *Sikes v. U.S. Dep't of Navy*, 896 F.3d 1227, 1239 (11th Cir. 2018)) (alteration in original).

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Karantsalis v. U.S. Dep't of Just.*, 635 F.3d 497, 500 (11th Cir. 2011); *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (applying Rule 56 to FOIA cases). The

> "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

If the movant sustains its burden, a non-moving party demonstrates a genuine issue of material fact by producing evidence by which a reasonable factfinder could return a verdict in its favor. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (citation omitted). The non-movant sustains this burden by demonstrating "that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116

(11th Cir. 1993).  In the alternative, the non-movant may "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency."  *Id.* at 1117; *see also Doe v. Drummond Co.*, 782 F.3d 576, 603-04 (11th Cir. 2015), *cert. denied*, 577 U.S. 1139 (2016).

The "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are [factfinding] functions, not those of a judge[ at the summary judgment stage].'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the [factfinder] is not required to believe." *Id.* at 151 (citation omitted).  "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  *Id.* (citation omitted).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure

of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.  In addition, a movant may prevail on summary judgment by submitting evidence "*negating* [an] opponent's claim," that is, by producing materials disproving an essential element of a non-movant's claim or defense.  *Id.* at 323 (emphasis in original).

There exists no issue for trial unless the nonmoving party submits evidence sufficient to merit a verdict in its favor; if the evidence is merely colorable or is not significantly probative, the court may grant summary judgment.  *Anderson*, 477 U.S. at 249-50.  The movant merits summary judgment if the governing law on the claims or defenses commands one reasonable conclusion, *id.* at 250, but the court should deny summary judgment if reasonable factfinders "could return a verdict for the nonmoving party."  *Id.* at 248.  That is, a court should preserve a case for trial if there exists "sufficient evidence favoring the nonmoving party for a [factfinder] to return a verdict for that party."  *Id.* at 249.

## SUMMARY OF FACTS

On October 13, 2023, Plaintiff Michelle Levin submitted a written request to the IRS's Central Processing Unit:

> This letter is intended to formally request, under Freedom of Information Act 5 U.S.C. § 552 ("FOIA"), and the regulations promulgated thereunder, information readily available to revenue agents and IRS Counsel, detailed below, which relates to employee retention credits created by the CARES Act.
>
> The requested information includes, but is not limited to:

> Any and all guidance or other information provided to revenue agents and IRS Counsel by any division, employee, or contractor, of the IRS or Department of Treasury, from March 2020 to the present, which relates to examination or evaluation of returns or other documents claiming the employee retention credits found in section 3134 of the Internal Revenue Code, enacted under section 2301 of the CARES Act, Pub. L. No. 116-136, and all amended versions to the same. Not included in this request is information made available to the public online such as the internal revenue manual.

(Doc. 39-1, at 10; *see also id.* at 2-3, ¶¶ 2-3).

The IRS estimated it would respond to Levin's FOIA request by May 10, 2024. (Doc. 39-1, at 3, ¶ 4; *see also* Doc. 7-8, at 2). On May 8, 2024, the IRS had not provided a complete response to Levin's request, and Levin filed the Complaint in this action. (Doc. 39-1, at 3, ¶¶ 4-5; *see also* Doc. 1). Later that day, the IRS produced documents responsive to Levin's request. (Doc. 39-1, at 3, ¶ 6). The IRS's cover letter stated it was producing 1,561 pages of documents and withholding one page in part. However, the production encompassed only 1,276 pages. (Doc. 39-1, at 3, ¶¶ 7-8).

On June 25, 2024, Levin filed an Amended Complaint "to account for the partial production of documents and to continue to seek to compel the disclosure of records unlawfully withheld by the [IRS]." (Doc. 7, ¶ 25).

> On January 22, 2025, after communications with the Department of Justice, Plaintiff agreed to narrow the scope of the FOIA request to reflect: "all readily available non-taxpayer specific guidance, including templates and trainings, provided by IRS Counsel to IRS Revenue Agents and Supervisory Revenue Agents related to examination or evaluation of returns claiming the employee retention credits found in section 3134 of the Internal Revenue Code, enacted under section 2301 of the CARES Act, Pub. L. No. 116-136.

(Doc. 35-3, ¶ 12).

On January 31, 2025, the IRS produced 371 additional pages of documents, which "allegedly included the Service's attempted transmittal of its pre-suit release of documents . . ., as well as additional documents . . . .  Importantly, the IRS did not withdraw any of its stated exemptions." (Doc. 39-1, at 5-6, ¶ 18).  Of those 371 pages, the IRS released 351 pages in full, partially withheld 19 pages, and fully withheld one page.  (Doc. 35-3, ¶ 13).  The IRS claimed the fully withheld page "falls within a FOIA exemption, . . . for which the portions exempt from disclosure are so inextricably intertwined with non-exempt material as to be non-segregable." (*Id.* ¶ 15).

The IRS asserts the withheld documents fall under FOIA Exemption 5, addressing the attorney work-product doctrine; FOIA Exemption 7(A), addressing information relevant to pending civil investigations in law enforcement matters; and FOIA Exemption 7(E), addressing techniques, procedures, and guidelines the IRS uses to enforce revenue laws.  (*Id.* ¶¶ 17-19).

## DISCUSSION

The Eleventh Circuit recently described the framework for evaluating FOIA claims:

> Under FOIA, requesters can seek the release of records maintained by a federal agency. 5 U.S.C. § 552(a). FOIA requires the federal agency, upon a records request that reasonably describes documents held by that agency, to make those documents promptly available to any person unless a statute exempts the information from disclosure. *Id.* § 552(a)(3), (b)(3). FOIA reflects a "strong public policy in favor of public access to

information in the possession of federal agencies." *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1190 (11th Cir. 2007) (quotation marks omitted).

A plaintiff may sue in federal court upon a showing that a federal agency has improperly withheld its records following a FOIA request. 5 U.S.C. § 552(a)(4)(B). The agency bears the burden to demonstrate that its records search was adequate and it properly withheld information. *Id.*; *Miccosukee Tribe*, 516 F.3d at 1248, 1258; *Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1175 (11th Cir. 2019).

An agency may rely on affidavits or declarations (collectively "declarations") to meet its burden "so long as they provide an adequate factual basis for the district court to render a decision." *Miccosukee Tribe*, 516 F.3d at 1258-59 (stating an adequate factual basis can be provided by affidavits, a *Vaughn* index, *in camera* review, or a combination of these methods).

An agency's declarations are entitled to a presumption of good faith. *See Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994); *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2nd Cir. 1994); *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). That presumption can be rebutted with evidence of bad faith on the part of the agency. *Jones*, 41 F.3d at 242; *Carney*, 19 F.3d at 812; *Maynard*, 986 F.2d at 556; *SafeCard Servs.*, 926 F.2d at 1202. Mere speculation, however, is not enough to rebut the presumption. *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 74 (D.C. Cir. 2018); *SafeCard Servs.*, 926 F.2d at 1200.

*Jimenez*, 119 F.4th at 899-900.

Levin does not challenge the adequacy of the IRS's search for records.[1]  Rather,

---

[1] Levin twice represented to the court in status reports that she does not challenge the adequacy of the IRS's search.  (*See* Doc. 31 (March 7, 2025, Joint Status Report), ¶ 7 ("On February 25, 2025, Plaintiff sent the Service a letter outlining her specific challenges to the FOIA exemptions the Service asserted.  Plaintiff does not challenge the adequacy of the search; rather, she challenges all of the FOIA exemptions invoked by the Service."); Doc. 33 (April 9, 2025, Joint Status Report), ¶ 7 (same)).  She also did not assert any arguments challenging the adequacy of the search in her summary judgment response brief, focusing instead on challenges to the exemptions the IRS asserted.  (*See* Doc. 38, at 18-29).

she challenges the IRS's withholding of records pursuant to Exemptions 5, 7(A), and 7(E). As Exemptions 7(A) and 7(E) protect the requested documents from disclosure, the court need not assess whether Exemption 5 prevents the disclosure.

The IRS withheld documents under subdivisions (A) and (E) of FOIA Exemption 7, both of which permit agencies to withhold "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Levin does not dispute that the requested documents satisfy this threshold inquiry.

Indeed, though the Eleventh Circuit has not adopted a definitive standard for assessing whether an agency has compiled records for a law enforcement purpose, *see Arenberg v. Drug Enf't Admin.*, 849 F.2d 579, 580-81 (11th Cir. 1988), the former Fifth Circuit has held that Exemption 7 "applies to civil and regulatory proceedings as well as to criminal matters." *Pope v. United States*, 599 F.2d 1383, 1386 (5th Cir. 1979) (citations omitted).[2] Moreover, district courts within the Eleventh Circuit have held that "[r]ecords are considered to be 'compiled for law enforcement purposes' if they 'focus specifically on alleged acts that could result in civil or criminal sanctions.'" *Scott v. Treasury Inspector Gen. for Tax Admin.*, No. 18-80366-CIV, 2018 WL 7082718, at *11 (S.D. Fla. Dec. 27, 2018) (quoting *Cappabianca v. Comm'r, U.S. Customs Serv.*, 847 F. Supp. 1558, 1565 (M.D. Fla. 1994)), *report and recommendation adopted*, No. 18-80366-CIV, 2019 WL

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

286856 (S.D. Fla. Jan. 17, 2019), *aff'd*, 787 F. App'x 642 (11th Cir. 2019).

One district court maintained that the phrase "law enforcement purposes" encompasses "the enforcement of civil, criminal, and administrative statutes and regulations such as those promulgated and enforced by the IRS." *Rosenglick v. I.R.S.*, No. 97-747-CIV-ORL-18A, 1998 WL 773629, at *2 (M.D. Fla. Mar. 10, 1998) (citing *Cappabianca,* 847 F. Supp. at 1565; *Church of Scientology Int'l v. IRS,* 995 F.2d 916, 919 (9th Cir. 1993), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016)).  Courts in other jurisdictions also consistently hold that the "IRS constitutes a law enforcement agency within the meaning of Exemption 7." *Shannahan v. I.R.S.*, 637 F. Supp. 2d 902, 918 (W.D. Wash. 2009) (first citing *Church of Scientology Int'l,* 995 F.2d at 919; and then *Lewis v. Internal Revenue Serv.,* 823 F.2d 375, 379 (9th Cir. 1987)).  *See also Berger v. I.R.S.*, 487 F. Supp. 2d 482, 500 (D.N.J. 2007), *aff'd*, 288 F. App'x 829 (3d Cir. 2008) (same); *Tax Analysts v. I.R.S.*, 294 F.3d 71, 77 (D.C. Cir. 2002) ("[A]gencies like IRS, that combine administrative and law enforcement functions, . . . may seek to avoid disclosure of records or information pursuant to Exemption 7."); *Allnutt v. U.S. Dep't of Just.*, No. CIV. Y-98-1722, 2000 WL 852455, at *1 (D. Md. Oct. 23, 2000) ("The Internal Revenue Service has the law-enforcement mandate required under the exemption." (citing *Lewis*, 823 F.2d 375)), *aff'd sub nom. Allnut v. Handler*, 8 F. App'x 225 (4th Cir. 2001).

More specifically, this court has stated that "[a] tax audit is certainly performed in aid of enforcement of our tax laws, civil and criminal, and there should be no

distinction under [Exemption 7] between monitoring activities and prosecutorial activities, both of which serve law enforcement purposes." *B & C Tire Co. v. Internal Revenue Serv., Dep't of Treasury, U. S.*, 376 F. Supp. 708, 713 n.11 (N.D. Ala. 1974); *see also EduCap Inc. v. I.R.S.*, No. CIV.A. 07-2106-RMC, 2009 WL 416428, at *4 (D.D.C. Feb. 18, 2009) ("An IRS audit is a 'law enforcement' activity for purposes of Exemption 7." (citing *Faiella v. IRS,* No. 05-238, 2006 WL 2040130, at *4 (D. N.H. July 20, 2006))). And the Fourth Circuit recently held that "[t]raining officers how to enforce the law is a 'law enforcement purpose,'" as Exemption 7 "is not limited to records compiled for law enforcement *proceedings*; it extends more broadly to records compiled for law enforcement *purposes*." *Grey v. Alfonso-Royals*, 140 F.4th 173, 178 (4ᵗʰ Cir. 2025) (emphasis in original) (first citing *Tax Analysts*, 294 F.3d at 79; and then *ACLU of Mass. v. U.S. Dep't of Homeland Sec.*, 707 F. Supp. 3d 77, 85-86 (D. Mass. 2023)).

Based upon the overwhelming weight of this persuasive authority, the court agrees that the IRS generated the requested documents, which include guidance issued to revenue agents for examining claims, for law enforcement purposes. Hence, the enquiry ensues whether the requested documents meet the specific requirements of Exemptions 7(A) and 7(E).

## I.    Exemption 7(A) Justifies the IRS's Refusal to Fully Disclose the Requested Documents.

FOIA Exemption 7(A) permits agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of

such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). As discussed in the previous section, Levin concedes the IRS sustained its burden as to the threshold requirement for FOIA Exemption 7(A), namely whether the documents excluded from disclosure constituted "records or information compiled for law enforcement purposes." Therefore, the second prong of Exemption 7(A) requires an assessment whether disclosure of the requested records "'(1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'" *Off. of Fulton Cnty. Dist. Att'y v. United States Dep't of Just.*, No. 1:18-CV-5902-MLB, 2021 WL 4205666, at *3 (N.D. Ga. Sept. 16, 2021) (quoting *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1540 (D.C. Cir. 1993)).

The IRS relies upon Amy Mielke's declaration to support the application of Exemption 7(A) in this case. Mielke declares:

> The pages listed in the subparagraph below are being withheld in full or in part pursuant to FOIA Exemption 7A, 5 U.S.C. § 552(b)(7)(A), because they contain information relevant to civil examinations – law enforcement matters – which have not concluded. The release of this information is reasonably expected to interfere with ongoing enforcement proceedings. Disclosure of this information would harm the ongoing examinations, as set forth below, by prematurely revealing the Service's evidence and strategy, revealing the nature, direction, scope, and focus of the Service's case, and giving premature insight into the strength of the Service's position and its reliance on certain evidence. As such, the following pages are withheld pursuant to Exemption 7A:

> b.    Pages 312-313, 315-324, 326, 362-363, and 366-369 are withheld in part, and page 314 is withheld in full, because they are template documents used by IRS Examiners in civil tax

examinations of ERC claims.  Pages 324, 326, 362-363, and 366-369 contain information as to the Service's interest in specific facts and claims during examinations.  The disclosure of this information would interfere with enforcement proceedings by revealing the nature, scope, and direction of such proceedings.  Specifically, disclosure of the redacted material would interfere with pending and ongoing ERC examinations and refund litigation by revealing IRS strategy and allowing taxpayers to avoid enforcement.  Such examinations can also lead to criminal investigations that give rise to criminal charges if tax deficiencies that result from fraud are discovered.  See Internal Revenue Manual § 9.5.13.2.1(2024).  Thus, interference with the civil examinations could also hinder criminal proceedings.

(Doc. 35-3, ¶ 18).

Hence, Mielke identifies civil examinations as the enforcement proceedings warranting application of the exemption.  She describes the examinations as "ongoing" because they "have not concluded."  She explains that disclosure of the requested documents would harm the ongoing examinations "by prematurely revealing the Service's evidence and strategy, revealing the nature, direction, scope, and focus of the Service's case, and giving premature insight into the strength of the Service's position and its reliance on certain evidence."  (*Id.*).

The court agrees that investigatory templates and documents disclosing the IRS's interest in particular facts could reasonably cause such consequences. The court also agrees with Mielke's assessment that disclosing the information could interfere not only with pending examinations, but also with pending refund litigation, as it may enable taxpayers to avoid enforcement, including avoiding civil examinations that may lead to criminal charges.

12

In so holding, the court finds persuasive the decision of the Southern District of Florida in *Villanueva v. United States Department of Justice*, No. 19-23452-CIV, 2021 WL 4342004 (S.D. Fla. Aug. 12, 2021). In that case, the plaintiff requested from the United States Department of Justice (DOJ) and Federal Bureau of Investigation (FBI) various "administrative instructions," or "investigative leads," including "the setting out of investigative guidelines and requests for specific investigative inquiries at various FBI field offices and other government agencies." *Id.* at *16. Though the record lacked sufficient information to render an ultimate determination, the district court stated that any such records would fall under Exemption 7(A) if their disclosure "to a knowledgeable person would disclose specific investigative procedures and strategies used in the investigation," as "[d]isclosure would potentially enable subjects of the investigation to alter or negate incriminating evidence which could be used in future proceedings and/or investigative efforts." *Id.* Similarly, Mielke declared that the information Levin seeks in the present case would disclose investigative procedures and strategies, which could enable taxpayers to avoid enforcement.

Levin objects that the IRS bases its withholding on a "broad enforcement program," rather than on a "concrete law enforcement proceeding." (Doc. 38, at 19). According to Levin, "exemption 7(A) is inapplicable to all redactions that are not taxpayer specific or investigation specific – which means that it is not applicable to any of the information withheld pursuant to this exemption in the present case." (*Id.* at 21). The weight of authority weighs against Levin's contention.

As a general matter, the legislative history as to Exemption 7's threshold requirement — "records or information compiled for law enforcement purposes" — militates against Levin's contention:

> Prior to 1986, Exemption 7 required a threshold showing that the materials in question were "investigatory records compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7) (1982). However, in 1986, Congress amended the exemption to protect "records or information compiled for law enforcement purposes," deleting any requirement that the information be "investigatory." Anti-Drug Abuse Act of 1986, § 1802(a), Pub. L. No. 99-570, 100 Stat. 3207, 3207-48 (1986) (amending 5 U.S.C. § 552(b)(7)). *See North v. Walsh,* 881 F.2d 1088, 1098 n.14 (D.C. Cir. 1989) (stating that the 1986 amendment "changed the threshold requirement for withholding information under exemption 7: the exemption formerly covered 'investigatory records compiled for law enforcement purposes'; it now applies more broadly to 'records or information compiled for law enforcement purposes'"); *Keys v. United States Dep't of Justice,* 830 F.2d 337, 340 (D.C. Cir. 1987) (same). And the legislative history makes it clear that Congress intended the amended exemption to protect both investigatory and non-investigatory materials, including law enforcement manuals and the like. *See* S. Rep. No. 98-221, at 23 (1983) (expressing intent to protect "sensitive non-investigative law enforcement materials" and to broaden the exemption to include records "regardless of whether they may be investigatory or noninvestigatory"). Congress also amended Exemption 7(E) to permit withholding of "*guidelines* for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," thus giving further indication that the statutory threshold was not limited to records or information addressing only individual violations of the law. *See* 5 U.S.C. § 552(b)(7)(E) (emphasis added); S. Rep. No. 98221, at 24 (1983).

> It is clear that, under the amended threshold of Exemption 7, *an agency may seek to block the disclosure of internal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation. See, e.g., PHE, Inc. v. Dep't of Justice,* 983 F.2d 248, 250-51 (D.C. Cir. 1993) (holding that portions of a FBI manual describing patterns of violations, investigative techniques, and sources of information available to

investigators were protected by Exemption 7(E)). The amended threshold
to Exemption 7 "resolve[s] any doubt that law enforcement manuals and
other non-investigatory materials can be withheld under (b)(7) if they were
compiled for law enforcement purposes and their disclosure would result
in one of the six recognized harms to law enforcement interests set forth
in the subparagraphs of the exemption." S. Rep. No. 98-221, at 23 (1983).

*Tax Analysts*, 294 F.3d at 79 (emphasis added in final paragraph).[3]

A similar construal ensued in *Am. C.L. Union of N. California v. Fed. Bureau of Investigation*, 881 F.3d 776 (9th Cir. 2018), a case in which the ACLU "requested documents compiled for general law enforcement purposes and not linked to a particular investigation." *Id.* at 779. After favorably citing the foregoing analysis in *Tax Analysts*, the court held that

when a FOIA request seeks guidelines and other generalized documents
compiled by a law enforcement agency not related to a particular
investigation, the government need not link the document to the
enforcement of a particular statute in order to claim the protection of
Exemption 7. Rather, the agency need only establish a rational nexus
between the withheld document and its authorized law enforcement
activities.

*Id.* at 781; *see also id.* at 780 ("[W]ere we to deny the application of Exemption 7 to generalized law enforcement documents simply because the government could not link them to enforcement of a specific law, the additional protections that Congress provided to those very documents in Exemption 7(E) would be nullified.").

---

[3] The Second Circuit has "frequently noted the District of Columbia Circuit's 'particular FOIA expertise' and looked to its decisions for guidance in interpreting the FOIA." *Knight First Amend. Inst. at Columbia Univ. v. United States Citizenship & Immigr. Servs.*, 30 F.4th 318, 324 (2d Cir. 2022) (citation omitted).

Likewise, as countenanced previously the Fourth Circuit reached the same conclusion:

> Grey asserts that, to be "compiled for law enforcement purposes," records must originate from or be used in a law enforcement investigation, not officer training. 5 U.S.C. § 552(b)(7). We disagree. The exemption is not limited to records compiled for law enforcement *proceedings*; it extends more broadly to records compiled for law enforcement *purposes*. Training officers how to enforce the law is a "law enforcement purpose." *See Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) ("[Exemption 7] protect[s] both investigatory and non-investigatory materials, including law enforcement manuals and the like."); *ACLU of Mass. v. U.S. Dep't of Homeland Sec.*, 707 F. Supp. 3d 77, 85-86 (D. Mass. 2023) (holding that pages from a handbook instructing DHS agents how to determine whether an individual is a gang member were properly redacted under Exemption 7(E)). A record with otherwise exempt content does not become subject to disclosure because it is used to train rather than to enforce the law directly. After all, Exemption 7(E) protects records that "would disclose techniques and procedures for law enforcement investigations or prosecutions," regardless of whether the agency uses those records to guide active investigations or train officers how to investigate. 5 U.S.C. § 522(b)(7)(E).

*Grey*, 140 F.4th at 178 (emphasis and alterations in original).

To the extent Levin contends the balance of Exemption 7(A)'s requirements obligates delineation of a specific "enforcement proceeding" more detailed than the IRS's portrayal in this case, she also falters. Generally, the Supreme Court has rejected the argument that an agency "must specifically demonstrate in each case that disclosure of the [requested records] would interfere with a pending enforcement proceeding." *National Labor Relations Board v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224 (1978). "An investigation is 'ongoing' if there is . . . a 'reasonable chance that an enforcement proceeding will occur.'" *Greenberger v. Internal Revenue Serv.*, 283 F. Supp. 3d 1354, 1374

(N.D. Ga. 2017) (quoting *Dickerson v. U.S. Dep't of Justice*, 992 F.2d 1426, 1430 (6th Cir. 1993)).  "So long as the investigation continues to gather evidence for a possible future case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies.'" *Id.* (citing *Manning v. U.S. Dep't of Justice*, 234 F. Supp. 3d 26, 33 (D.D.C. 2017)) (cleaned up).  Exemption 7(A) also applies to "prospective" or "reasonably anticipated" enforcement proceedings.  *See Mantilla v. U.S. Dep't of State*, No. 12-21109-CIV, 2013 WL 424433, at *6 (S.D. Fla. Feb. 1, 2013) (citing *Manna v. Dep't of Justice,* 51 F.3d 1158, 1164 (3rd Cir. 1995) (in turn citing *Robbins Tire & Rubber Co.,* 437 U.S. at 224)); *Moorefield v. United States Secret Serv.,* 611 F.2d 1021, 1024-26 (5th Cir. 1980) (exemption 7(A) applies when "a law enforcement proceeding is pending or prospective")); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (hereinafter "*CREW*") (exemption applies to "enforcement proceedings that are . . . pending or reasonably anticipated") (citing *Mapother*, 3 F.3d at 1540)).

The D.C. Circuit's decision in *Mapother v. Dep't of Just.*, 3 F.3d 1533 (D.C. Cir. 1993) aptly portrays the applicability of Exemption 7(A) to Levin's requested disclosure vis-à-vis the requirement for, in this regard, a "reasonably anticipated enforcement proceeding."  In *Mapother*, two private individuals filed FOIA requests seeking a report and associated documents regarding an order issued by the Attorney General barring Kurt Waldheim — whom the DOJ believed had participated in Nazi war crimes as an officer in the German army — from entering the United States. *Id.* at 1535.  The DOJ

17

withheld the material based upon Exemption 7(A), and the district court ordered disclosure of most of the records. *Id.* at 1536.

On appeal, the D.C. Circuit addressed Exemption 7(A) as to certain items of the contested information and recognized the exemption applies only

> where enforcement proceedings are "pending or contemplated." *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 870 (D.C. Cir. 1980). The word "contemplated," as used in *Coastal States,* speaks to the enforcing agency's intentions. For this, we have substituted "reasonably anticipated," a phrase that may be applied equally to cases in which the agency has the initiative in bringing an enforcement action and those, such as this one, in which it must be prepared to respond to a third party's challenge.

*Mapother,* 3 F.3d at 1540.

Although the DOJ did not maintain any enforcement proceedings at the time of the FOIA request, the *Mapother* court championed the foregoing "more general standard" because there existed a "reasonable likelihood" that challenges would be brought "in the run of cases involving persons excluded from the United States" because of their alleged participation in Nazi war crimes. *Id.* at 1542. Indeed, the court portrayed the breadth of the "reasonably anticipated enforcement proceeding" requirement with its express holding:

> The critical question facing us, then, is not whether Mr. Waldheim is likely to appeal his listing [excluding him from entry into the United States], but whether, in the run of cases involving persons excluded from the United States . . ., there is a reasonable likelihood of a challenge. Although the district court did not direct its attention to this issue, we think it plain that the prospect of such a challenge is not so unreasonable as to permit us to affirm the district court's ruling. The desire of many tens of thousands of aliens to enter the United States is too manifest, and the crimes committed

18

by the Nazis too heinous, to permit the assumption that an exclusion order will not be challenged. We hold, then, that in such cases — and therefore in this one — Exemption 7(A)'s requirement that enforcement proceedings be reasonably anticipated is met.

*Id.*

The same result inheres in this case.  One may readily ascertain the nature and scope of the "run of cases" comprising the "reasonably anticipated proceedings" subject to Exemption 7(A)'s purview:  the reasonable likelihood there exists scores of potential ERC examinations and refund litigation.  Indeed, an attachment to Levin's Amended Complaint reasonably signals the scope of anticipated enforcement proceedings because "the IRS has processed 3.6 million [ERC] claims with hundreds of thousands still awaiting review and hundreds of thousands more filed since the processing moratorium began in September 2023."  (Doc. 7-1, at 2).  Some of those claims have already generated enforcement proceedings.  That multitude of claims surely includes potential targets of ERC fraud enforcement that seek to avoid criminal liability, and thus, would appreciate gaining access to the documents withheld from disclosure by the IRS.

And in any event, the Mielke declaration expressly posits the existence of pending and ongoing ERC examinations and litigation commanding application of Exemption 7(A).  Ample caselaw supports exclusion of such information from disclosure under the exemption.  For example, in *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082 (D.C. Cir. 2014), the court acknowledged that "[i]n

the typical case, . . . the requested records relate to a specific individual or entity that is the subject of the ongoing investigation, making the likelihood of interference readily apparent." *Id.* at 1098 (citations omitted). However, in the case before it the DOJ claimed protection for records related to "a wide-ranging public corruption investigation," as "the release of the requested records could disclose to individuals under investigation the identities of potential witnesses, the content of the government's evidence and trial strategy and the focus of the investigation." *Id.* The Court acknowledged it had "often found that similar concerns justify withholding under Exemption 7(A)," as long as the agency sufficiently demonstrates the withholding implicates an ongoing investigation. *Id.* at 1098-99. The Court remanded the case to the district court for further factual findings as to "whether a related investigation is in fact ongoing and, if so, how the disclosure of [the requested documents] would interfere with it." *Id.* at 1099. As previously discussed, the IRS has demonstrated ERC examinations related to the requested documents remain ongoing, even though the IRS did not identify the specific individuals under investigation.

Moreover, in *Juarez v. Department of Justice*, 518 F.3d 54 (D.C. Cir. 2008), the D.C. Circuit reviewed the requirement that Exemption 7(A) only justifies withholding of material related to a "'concrete prospective law enforcement proceeding,'" and the court declared the requirement did not represent "quite the formidable hurdle [the plaintiff] would make it out to be." *Id.* at 59 (quoting *Robbins Tire & Rubber Co.*, 437 U.S. at 232). Though the Drug Enforcement Agency (DEA) had failed to follow up

with the plaintiff's requests to act as an informant in a pending investigation, the DEA presented sufficient evidence via affidavits that the investigation remained ongoing and could eventually lead to a prosecution. *Id.* Again, the IRS has presented sufficient evidence, in the form of Mielke's declaration, that ERC examinations remain ongoing.

The other cases Levin cites do not persuade the court. Levin primarily relies on the 1991 decision in the District of Columbia district court in *Nat'l Sec. Archive v. F.B.I.*, 759 F. Supp. 872 (D.D.C. 1991). In that case, the FBI invoked Exemption 7(A) for "information concerning the FBI's overall ongoing foreign counterintelligence program directed at hostile intelligence services," reasoning that "if hostile intelligence officers had that information, they might be able to develop procedures to thwart our intelligence methods by adjusting their practices or planting information." *Id.* at 883 (cleaned up). The district court rejected that argument, as the FBI did not identify "a concrete prospective law enforcement proceeding." *Id.* (citing *Bevis v. Dep't of State,* 801 F.2d 1386, 1389 (D.C. Cir. 1986)) (cleaned up). Nonetheless, the district court granted the FBI the opportunity to submit "an affidavit asserting whether there are proceedings currently pending *or contemplated* relating to each segment for which exemption 7(A) has been invoked." *Id.* (emphasis added).

The present case presents different circumstances. The IRS may satisfy its Exemption 7(A) burden by identifying currently pending or contemplated proceedings to which the exemption may apply. The IRS has done so via Mielke's declaration, which proclaims that "disclosure of the redacted material would interfere with pending and

21

ongoing ERC examinations and refund litigation." In addition, as referenced previously

an attachment to Levin's Amended Complaint acknowledges the prevalence of ERC

investigations by stating that as of March 5, 2024, "the IRS has processed 3.6 million

[ERC] claims with hundreds of thousands still awaiting review and hundreds of

thousands more filed since the processing moratorium began in September 2023."

(Doc. 7-1, at 2).  In the Report of Parties' Planning Meeting, filed December 30, 2024,

Levin acknowledged "over fifty ERC refund cases filed in the last 12 months."  (Doc.

29, at 6).  Nothing in the *National Security Archive* decision, or in any other authority the

court has located, supports Levin's assertion that the IRS must identify a specific

taxpayer investigation to which the exemption applies.

Levin also cites *Bevis v. Department of State*, 801 F.2d 1386 (D.C. Cir. 1986), for the

general proposition that "[e]xemption 7(A) . . . cannot justify withholding unless the

material withheld relates to a 'concrete prospective law enforcement proceeding.'" *Id.*

at 1389 (quoting *Carson,* 631 F.2d at 1018) (alterations in original); (*see* Doc. 38, at 20).

That decision does not advance Levin's position, as the D.C. Circuit found the State

Department presented "a sufficient showing of 'concrete prospective law enforcement

proceeding[s].'" *Id.* at 1389.  Though charges had been dismissed against three of the

prime suspects in the investigation, the evidence sufficiently demonstrated the

possibility of other, future proceedings.  *Id.*

Finally, Levin cites *Badran v. U.S. Department of Justice*, 652 F. Supp. 1437 (N.D.

Ill. 1987), in which the former Immigration and Naturalization Service (INS) withheld

a Report of Investigation "because it contains information that the INS could use against a person who might some day violate immigration laws." *Id.* at 1440. The district court rejected that reasoning as "bewildering and indefensible," because "[i]f an agency could withhold information whenever it could imagine circumstances where the information might have some bearing on some hypothetical enforcement proceeding, the FOIA would be meaningless; all information could fall into that category." *Id.* However, the *Badran* decision does not apply here, as the IRS has identified pending and ongoing ERC examinations and refund litigation with which the requested information would interfere, rather than simply suggesting the mere possibility of a hypothetical enforcement proceeding. Furthermore, the *Mapong* decision supports the applicability of Exemption 7(A) to reasonably anticipated proceedings falling within the court's rationale.

In summary, the court finds the IRS properly invoked Exemption 7(A) to withhold the redacted portions of the documents Levin requested.

## II.    Exemption 7(E) Justifies the IRS's Refusal to Fully Disclose the Requested Documents.

FOIA Exemption 7(E) permits agencies to withhold

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E).

"IRS tax examinations constitute 'law enforcement' investigations" pursuant to Exemption 7(E). *Agrama v. Internal Revenue Serv.*, 282 F. Supp. 3d 264, 274 (D.D.C. 2017 (first citing *Vento v. IRS*, 714 F. Supp. 2d 137, 148 (D.D.C. 2010); and then *EduCap*, 2009 WL 416428 at *4)), *aff'd*, No. 17-5270, 2019 WL 2064505 (D.C. Cir. Apr. 19, 2019).

The exemption separately protects "guidelines" and "techniques and procedures" for law enforcement proceedings. The term "guidelines" refers to "how the agency prioritizes its investigative resources . . . ." *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F. 4th 771, 784 (9th Cir. 2022); *see also Knight First Amend. Inst. at Columbia Univ. v. United States Citizenship & Immigr. Servs.*, 30 F.4th 318, 329 (2d Cir. 2022) ("[G]uidelines . . . generally refers in the context of Exemption 7(E) to resource allocation." (quoting *Allard K. Lowenstein Int'l Hum. Rts. Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 682 (2d Cir. 2010))). "For example, if a law enforcement agency concerned with tax evasion directs its staff to bring charges only against those who evade more than $100,000 in taxes, that direction constitutes a 'guideline.'" *Allard K. Lowenstein Int'l Hum. Rts. Project*, 626 F.3d at 682.

As for the other type of information covered

> [u]nder Exemption 7(E), "[t]he phrase 'techniques and procedures' . . . refers to how law enforcement officials go about investigating a crime." *Allard K. Lowenstein Int'l Human Rights Project*[, 626 F.3d at 682]. The purpose of this exemption is to shield sensitive law enforcement techniques from disclosure to prevent criminals from "circumventing future [law enforcement] investigations." *Blackwell v. Fed. Bureau of Investigation*, 680 F. Supp. 2d 79, 92 (D.D.C. 2010), *aff'd*, 646 F.3d 37 (D.C. Cir. 2011) . . . .

24

*Broward Bulldog, Inc.*, 939 F.3d at 1191 (first, second, and fourth alterations in original). As such, the phrase "'techniques and procedures' includes both law enforcement methods – the actions that law enforcement personnel take to identify and neutralize bad actors – as well as the triggers for the application of methods." *Knight First Amend. Inst. at Columbia Univ.*, 30 F.4th at 330 (quoting *Allard K. Lowenstein Int'l Hum. Rts. Project*, 626 F.3d at 682).[4]

"The bar for withholding information under exemption 7(E) is a 'relatively low bar.'" *Am. Fed'n of Gov't Emps. Loc. 527 v. United States Immigr. & Customs Enf't*, No. 1:21-CV-21992-KMM, 2024 WL 1179971, at *9 (S.D. Fla. Feb. 14, 2024) (quoting *Rojas-Vega v. ICE*, 302 F. Supp. 3d 300, 310 (D. D.C. 2018)), *report and recommendation adopted*, No. 1:21-CV-21992-KMM, 2024 WL 1174332 (S.D. Fla. Mar. 18, 2024).

> "[S]uch information may be withheld 'not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'"

*Id.* (quoting *Parker v. ICE*, 238 F. Supp. 3d 89, 100 (D.D.C. 2017) (in turn quoting *Mayer*

---

[4] Exemption 7(E) definitely applies to *guidelines* for law enforcement investigations or prosecutions only if disclosure "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). There exists a circuit split as to whether the reasonable expectation proviso applies to the exemption's *techniques and procedures* category of information. *See Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1194 (11th Cir. 2019) (noting the Circuit split). However, similar to the *Broward* decision, this court "need not take a side" in the dispute, as the IRS can satisfy the "circumvention of the law" standard with regard to guidelines, techniques, and procedures for law enforcement investigations or prosecutions. *Id.* at 1194.

*Brown LLP v. I.R.S.*, 562 F.3d 1190, 1193 (D.C. Cir. 2009))).

"'Exemption 7(E) clearly protects information that would train potential violators to evade the law or instruct them how to break the law.'" *Id.* at *11 (quoting *Mayer Brown LLP*, 562 F.3d at 1193).  But the exemption also protects "'from disclosure information that could increase the risks that a law will be violated or that past violators will escape legal consequences.'" *Id.* (quoting *Mayer Brown LLP*, 562 F.3d at 1193); *see also Carpezzi v. United States Dep't of Just.*, No. 2:21-CV-180-JLB-KCD, 2023 WL 2648166, at *9 (M.D. Fla. Mar. 27, 2023) ("'An agency must demonstrate only that release of a document might increase the risk that a law will be violated or that past violators will escape legal consequences.'" (quoting *Jeanty v. F.B.I.*, No. 13-20776-CIV, 2014 WL 4206700, at *7 (S.D. Fla. Aug. 25, 2014) (in turn citing *Pub. Emps. For Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 2016 (D.C. Cir. 2014))).

The IRS relies upon Amy Mielke's declaration to support the application of Exemption 7(E) in this case.  Mielke declares:

> The pages listed in the subparagraph below are withheld in part pursuant to FOIA Exemption 7E, 5 U.S.C. § 552(b)(7)(E), because they contain information describing certain techniques, procedures, and guidelines used by the Service to enforce revenue laws, and disclosure of the use of such techniques, procedures and guidelines would risk circumvention of the law.
>
>> a.    Pages 312-313, 315-324, 326, 362-363, and 366-369 are withheld in part, and page 314 is withheld in full.  They comprise portions of the Form 886-A Assisted Living Facilities, Form 886-A, IDR, which consists of guidelines, techniques, and procedures

> used by IRS examiners evaluating ERC claims. This information reveals the methods that IRS examiners use to identify deficient claims, including specific methods of questioning, and the triggers for application of those methods. Pages 316-323 explicitly are instructions for questions to ask and records to request under specific certain circumstances during examinations. Pages 324, 326, 362-363, and 366-369 contain information as to the Service's interest in specific facts and claims. If such information is disclosed, taxpayers would be able to anticipate application of IRS guidelines and procedures for evaluating ERC claims and use that knowledge to circumvent the law.

(Doc. 35-3, ¶ 19).

After reviewing Mielke's declaration and the redacted documents, the court agrees the redacted material represents guidelines, techniques, and procedures IRS examiners may use in evaluating ERC claims, thereby satisfying the low bar for the protection of Exemption 7(E). The documents reveal the agency's priorities in allocating investigative resources, the triggers for initiating an investigation, and the methods used during the investigation. Disclosing any such material presents a reasonable expectation of the risk of circumventing the law, as it may train potential violators to evade the law, increase the risk of legal violations, and/or permit past violators to escape legal consequences. *See, e.g., Am. Fed'n of Gov't Emps. Loc. 527*, 2024 WL 1179971, at *10-11 (S.D. Fla. Feb. 14, 2024) (Exemption 7(E) protects from disclosure "information 'pertaining to the purpose and investigatory uses of interviews, how interviews should be conducted, specific questions that should be asked, investigatory considerations of how interviews should be conducted, tools to utilize, and the evaluation of the truthfulness of witness statements,'" as well as "'specific

guidance, investigatory processes, investigatory considerations, techniques, and steps pertaining to the use of certain law enforcement databases and systems in furtherance of OPR investigations,'" because disclosure "would compromise the tactics ICE OPR Special Agents utilize in conducting investigations" and "'could coach future witnesses in similar cases on how to avoid providing incriminating information, hindering the future use of these investigative techniques.'") (citations omitted), *report and recommendation adopted*, No. 1:21-CV-21992-KMM, 2024 WL 1174332 (S.D. Fla. Mar. 18, 2024); *Luthmann v. Fed. Bureau of Investigation*, No. 2:21-CV-716-JES-NPM, 2024 WL 2187699, at *13 (M.D. Fla. May 15, 2024) (Exemption 7(E) protected from disclosure "FBI methods used to collect and analyze information for investigative purposes" and "investigatory details about how the DOB justifies its pursuit of wiretap orders"); *Am. C.L. Union of Maine Found. v. United States Citizenship & Immigr. Servs.*, No. 2:20-CV-00422-JAW, 2022 WL 2355502, at *1 (D. Me. June 30, 2022) (Exemption 7(E) protects documents containing "instruction as to questions to ask and measures to implement in response to certain documents or to an applicant's assertions." (citing *Knight First Amend. Inst. at Columbia Univ.*, 30 F.4th at 331-33)), *report and recommendation adopted sub nom. Am. C.L. Union of Maine Found. v. U.S. Citizenship & Immigr. Servs.*, No. 2:20-CV-00422-JAW, 2022 WL 4298419 (D. Me. Sept. 19, 2022); *Palmarini v. Internal Revenue Serv.*, No. CV 17-3430, 2019 WL 1429547, at *5 (E.D. Pa. Mar. 29, 2019) (citation omitted) (Exemption 7(E) protected "a checklist form that indicates why Plaintiffs were selected for examination and includes other grounds that the IRS uses to assess compliance," as

"its disclosure may enable tax dodgers to avoid detection.").

Levin lodges several objections to the application of Exemption 7(E).  First, she asserts Exemption 7(E) does not prevent disclosure of "a 'secret body of law' that could help a taxpayer with compliance with the law, rather than its evasion."  (Doc. 38, at 22).  She cites *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190 (D.C. Cir. 2009), for the proposition Exemption 7(E) does not protect disclosure of "garden-variety legal analysis," such as "discussion and digests of useful caselaw."  *Id.* at 1194 n.1 (cleaned up) (citing *PHE, Inc.,* 983 F.2d at 251-52).  However, there exists no indication the material sought here contains garden-variety legal analysis or general discussion of case law.[5]

Levin asserts that some of the redacted documents "appear to be more general legal analysis discussions, at least in part, because they follow a discussion of government orders and guidance."  (Doc. 38, at 25).  The record does not support that assertion.  The pages Levin references discuss various applications and ramifications of IRS Notice 2021-20 in specific situations.  (Doc. 39-1, at 167-79).  That the IRS left unredacted descriptions of the requirements of the Notice itself, rather than its application to specific situations, undermines Levin's argument.  On one page, the IRS even left unredacted a paragraph with the heading "Summary of Applicable Law."  (*Id.*

---

[5] Despite the observation about general case law descriptions cited by Levin, the D.C. Circuit held in *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190 (D.C. Cir. 2009), that Exemption 7(E) exempts disclosure of IRS settlement guidelines, as they may educate a potential tax evader "how to best structure an evasion so as to avoid the maximum enforcement efforts of the IRS."  *Id.* at 1194.  That holding actually supports the IRS's position.

at 179).   Thus, it appears the IRS disclosed general discussions of the law, while redacting more specific application strategies in certain situations.

Levin also cites *Hawkes v. Internal Revenue Serv.*, 507 F.2d 481 (6th Cir. 1974) ("*Hawkes II*"), which assessed the IRS's obligation to disclose "guidelines which I.R.S. agents are to follow in determining which tax returns should be audited and which items on a return deserve special scrutiny." *Id.* at 484.  As an example:

> one paragraph which has been made public, § 6.051 of the Return Classifier's Handbook, states, 'exhibit E . . . lists the average ratio of officers' salaries to gross income in various types of businesses.'  The I.R.S. seeks continued secrecy of Exhibit E, presumably on the ground that knowledge of the table's specific ratios would encourage corporations not to report salaries in excess of the averages, with the hope of avoiding an audit concerning the reasonableness of their deductions for officers' salaries. The already disclosed portion of § 6.051 states, however, 'the Table is not to be used as an inflexible measure of the reasonableness of compensation, but rather as a guide for testing the reasonableness of the deduction. What constitutes reasonable compensation depends upon the facts in each case.'

*Id.*

The Sixth Circuit held that disclosure of the ratios "would not significantly hamper enforcement activities," as the requested information "merely enables an individual to conform his actions to an agency's understanding of the law applied by that agency . . ." *Id.*  "Far from impeding the goals of law enforcement, in fact, the disclosure of information clarifying an agency's substantive or procedural law serves the very goals of enforcement by encouraging knowledgeable and voluntary compliance with the law."  *Id.* (citing *Hawkes v. Internal Revenue Service*, 467 F.2d 787, 795 (6th Cir.

1972) ("*Hawkes I*").  The Court further reasoned:

> Disclosure of Exhibit E would give the public a rough notion of what salaries may be unreasonable for corporate deduction purposes, in the view of the enforcing agency – the I.R.S. The sole effect of disclosure of this information would not be easier evasion of the tax laws. Rather, companies taking unreasonable deductions would be encouraged to reduce their officers' salaries to within the ranges specified in Exhibit E, and companies wishing substantially to exceed the average range would be on notice that proof of the reasonableness of the higher salary deductions would probably be required by an I.R.S. auditor.

*Id.* at 484.

However, as Levin acknowledges (*see* Doc. 38, at 23), *Hawkes* addressed Exemption 2, not Exemption 7(E).  Exemption 2 protects disclosure of matters "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  That exemption "is . . . a very narrow one and is to be applied only where the sole effect of disclosure would be to enable law violators to escape detection." *Hawkes II*, 507 F.2d at 483 (quoting *Hawkes I*, 467 F.2d at 795-97).  That presents a more exacting standard than Exemption 7(E), which requires only "the chance of a reasonably expected risk" that disclosure would circumvent the law.  *Am. Fed'n of Gov't Emps. Loc. 527,* 2024 WL 1179971, at *9.  As such, *Hawkes* does not persuade the court to forego application of Exemption 7(E) to the materials Levin requested in this case, particularly considering the ample persuasive authority cited above to support applying the exemption.

Levin also argues the exemption does not apply to the undisclosed material because the requested documents "concern a credit that is no longer claimable.  Instead,

31

the information is sought to evaluate whether already submitted ERC claims are valid." (Doc. 38, at 25).  According to Levin, "[t]he redacted information is the information that the IRS needs to see to determine whether or not the ERC claim is properly substantiated"; thus, "[t]he IRS essentially is claiming that the public is not entitled to know what it needs to substantiate an ERC claim until after they (the public) fail to provide that information," a position she claims "defies logic."  (*Id.* at 25-26).

For several reasons, this argument does not persuade the court.  True, the ERC applied only to "wages paid after June 30, 2021, and before October 1, 2021 (or, in the case of wages paid by an eligible employer which is a recovery startup business, January 1, 2022)," 26 U.S.C. § 3134(n), and the CARES Act, which created the ERC, expired on May 10, 2023.  *McGuire-Mollica v. Warden, FCI Marianna*, No. 24-12517, 2025 WL 1860326, at *2 (11th Cir. July 7, 2025).  Nevertheless, Levin acknowledges the IRS continues to review already submitted ERC claims.  Levin alleges in her Amended Complaint that "'thousands of audits' [remain] in the IRS pipeline" related to the ERC. (Doc. 7, ¶ 16).  And all taxpayers have two years after the IRS disallows a claim to file for a refund in federal court.  26 U.S.C. § 6532(a)(1).  Taxpayers subject to pending investigations or prosecutions, or who are considering refund claims, still could use the techniques, procedures, or guidelines for law enforcement investigations contained within the requested materials to circumvent the law.  As previously discussed, Exemption 7(E) applies not only to information that would train potential violators to evade the law in the future, but also to information that could increase the risk of a past

violator escaping legal consequences.  *See Am. Fed'n of Gov't Emps. Loc. 527*, 2024 WL 1179971, at *8.

Furthermore, the court finds no incongruity between the IRS's requirement that taxpayers substantiate their ERC claims and the IRS's withholding of the redacted portions of the requested documents.  Taxpayers do not lack guidance on how to substantiate ERC claims, as the statute itself provides parameters for eligibility, and the IRS website provides detailed information on the ERC, including an eligibility checklist. https://www.irs.gov/coronavirus/employee-retention-credit, last visited January 13, 2026.

Levin argues the IRS's publication of checklists for ERC claims and "audit technique guides" undermine its assertion that the requested information falls under Exemption 7(E).  (Doc. 38, at 26).  The Eleventh Circuit has held that "law enforcement techniques or procedures that are universally known to the public cannot be shielded from disclosure under" FOIA.  *Broward Bulldog, Inc.*, 939 F.3d at 1191 (first citing *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 551 (6th Cir. 2001); then *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1064 (3d Cir. 1995); and then *Rosenfeld v. U.S. Dep't of Justice,* 57 F.3d 803, 815 (9th Cir. 1995)).

> But even for well-known techniques or procedures, Exemption 7(E) protects information that would reveal facts about such techniques or their usefulness that are not generally known to the public, as well as other information when disclosure could reduce the effectiveness of such techniques. *See, e.g.*, *Vazquez v. U.S. Dep't of Justice*, 887 F. Supp. 2d 114, 116-17 (D.D.C. 2012) (observing that while the public is generally aware of the Bureau's National Crime Information Center databases, details of

33

their use and whether individuals are mentioned in them is not known to the public). For example, when disclosure would expose specific vulnerabilities in law-enforcement investigative techniques and procedures, Exemption 7(E) applies. *See, e.g., Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 42 (D.C. Cir. 2011) (holding that Exemption 7(E) applied when disclosure would "expos[e] [the Bureau's] computer forensic vulnerabilities to potential criminals").

*Id.* at 1191-92 (alterations in original).

The withheld documentation in the present cases includes information not generally known to the public, such as guidelines, techniques, and procedures IRS examiners use in processing ERC claims; methods used to identify deficient claims, including questioning methods and the triggers for applying those methods; questions to ask and records to request under specific examination scenarios; and the IRS's interest in specific facts and claims. Therefore, the IRS's public disclosure of certain information about processing ERC claims does not prevent its invocation of Exemption 7(E) as to additional information not available to the public.

In summary, the court finds the IRS properly invoked Exemption 7(E) to withhold the redacted portions of the documents Levin requested.

## CONCLUSION

As explicated herein, FOIA Exemptions 7(A) and 7(E) protect from disclosure the information Levin seeks from the IRS. Accordingly, the court **GRANTS** summary judgment in favor of the IRS. The court will enter a separate final judgment.

**DONE** and **ORDERED** this 14th day of January, 2026.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE